Horacio Cordero, Jr., peticionario, apelado y apelante *v.* Corte de Distrito de San Juan, Hon. Ricardo La Costa, Jr., Juez, y Celestina Abarca Sanfeliz, demandados, apelante y apelada la última.

Núm. 8449.—*Sometido:* Diciembre 20, 1941. *Resuelto:* Enero 30, 1942.

*R. Díaz Collazo,* abogado de la apelante apelada; *Harry M. Besosa,* abogado del apelado apelante; *José López Baralt,* como *amicus curiae.*

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

En octubre 27, 1941, el juez que quedó al frente de la corte durante las vacaciones—juez de turno—decidió una petición de *certiorari* que le presentara Horacio Cordero, Jr. para revisar los procedimientos de la Corte de Distrito de San Juan en el pleito de desahucio que contra él siguiera Celestina _ Abarca Sanfeliz, incidente sobre prestación de fianza para apelar, en los siguientes términos:

"Por los motivos consignados en la anterior opinión se declara con lugar la petición presentada en este caso en cuanto a la resolución dictada por la Corte de Distrito de San Juan el 3 de octubre y sin lugar en cuanto a la sentencia dictada el 16 de septiembre de 1941, y como consecuencia de ello se anula y deja sin efecto la mencionada resolución del día 3 de octubre de 1941, no porque en su fondo sea errónea, sino por haber sido dictada prematuramente y sin haber concedido al demandado la oportunidad de que el fiador Antonio Pérez Amador declarara en relación con la propiedad que hizo constar como garantía en la fianza prestada en apelación, a pesar de que la corte inferior había abierto el caso de nuevo de acuerdo con su orden del día 2 de octubre de 1941. Devuélvanse los autos a la corte inferior para ulteriores procedimientos."

No conformes con la sentencia, apelaron de ella para ante el tribunal en pleno el peticionario y la demandante en el pleito de desahucio. Los recursos se tramitaron conjuntamente y serán estudiados en esta sola opinión.

El peticionario sostiene que la resolución de la corte de distrito de octubre 3, 1941, debe dejarse sin efecto no por prematura si que por errónea y la sentencia del juez de turno adicionarse declarando que la fianza prestada es suficiente

para que el recurso de apelación que interpuso contra la sentencia de desahucio siga adelante.

Por el contrario, la demandante en el desahucio alega que el juez de turno fué demasiado lejos y que su sentencia debe revocarse y dictarse otra declarando la petición de certiorari sin lugar. A su juicio como la fianza que se prestó para apelar es y fué declarada sin valor por la corte de distrito, la sentencia decretando el desahucio es firme y su ejecución no debe demorarse.

Como se ha indicado, en la Corte de Distrito de San Juan se siguió un pleito de desahucio por Celestina Abarca Sanfeliz contra Horacio Cordero, Jr. La propiedad envuelta lo era la casa de mampostería de dos plantas número 13 de la Calle Comercio de esta capital. La causa alegada para el desahucio, la terminación, por aviso, del contrato de arrendamiento pactado sin fijar el tiempo de su duración, por un canon mensual de ciento quince dólares.

El 16 de septiembre de 1941 el pleito terminó por sentencia declarando la demanda con lugar y en su consencuencia ordenando el lanzamiento del demandado dentro del término de quince días contados desde que la sentencia fuera firme.

La sentencia se notificó al demandado Cordero al día siguiente y cinco días después el dicho demandado apeló de la misma para ante este Tribunal Supremo, acompañando una fianza por virtud de la cual él y los fiadores Antonio Pérez Amador y Andrés Morales, mayores de edad, propietarios y vecinos de San Juan, se obligaron para con la demandante Abarca hasta la suma de quinientos dólares para responderle de los daños y perjuicios que la apelación pudiera ocasionarle y de las costas, entendiéndose que el demandado quedaba además comprometido a seguir depositando ciento veintinueve dólares mensuales hasta la resolución definitiva del pleito.

Después de la firma del documento por el principal y sus fiadores, aparecen los juramentos de éstos. Pérez Amador juró que tenía bienes por valor de ocho mil dólares—

casa y solar, parada 3½, Puerta de Tierra, y Andrés Morales que tenía bienes por valor de cinco mil dólares—casa y solar, Las Casas 2, Santurce. La fianza fué aprobada por la corte el propio día 22 de septiembre de 1941.

El 24 de septiembre la demandante Abarca impugnó la fianza por varios motivos, entre ellos porque los fiadores no tenían los bienes de que juraron ser dueños, acompañando a ese efecto certificación del registrador de la propiedad expresiva de que según los índices del registro no aparecían fincas inscritas a favor de los fiadores en Puerta de Tierra ni en Santurce, sección norte.

En septiembre 26, comparecieron ante la corte de distrito ambas partes por sus abogados. Pidió el del demandado que se le concediera tiempo para presentar cierta escritura creditiva de la solvencia de un fiador y la corte le concedió hasta el día siguiente. Manifestó, además, que según la investigación que había practicado los fiadores tenían propiedades. Se opuso la demandante, y la corte dictó una orden para que los fiadores comparecieran ''el día 29 de este mes, a las dos de la tarde, a declarar sobre los bienes que poseen.''

En el día señalado—septiembre 29—volvieron a comparecer las partes por sus abogados. Los fiadores no comparecieron, informando el secretario que no se les citó por culpa suya. El demandado presentó una certificación del registrador de la propiedad demostrativa de que el fiador Morales tenía la finca que juró tener inscrita a su nombre y reconoció que la finca mencionada en el juramento por el otro fiador Pérez Amador no estaba inscrita a nombre suyo y siguió diciendo:

''. . . . En estas condiciones, le informé a mi cliente esa situación, y mi cliente me acaba de entregar del señor Pérez Amador, para que haga buena su firma en esa fianza, la cantidad de $500, para que se deposite para responder de esa firma en esa fianza.''

Como la corte inquiriera: ''Y para responder al juramento prestado por él, ¿qué cantidad hay?'', el abogado contestó:

"En eso yo no tengo nada que decir. Yo únicamente tengo que ver en este pleito es para salvar los intereses de mi representado. Yo respondo a la corte de mis actos, y aquí tiene la corte $500 para que se depositen por el Secretario para responder de su firma, que es buena por $500; y aquí están los $500 (deposita los billetes de banco sobre la mesa del Secretario en corte abierta)."

Se opuso la demandante por su abogado y la corte sostuvo su objeción. Insistió el demandado por el suyo, como sigue:

"Es que la fianza no hay que tocarla. La fianza está bien constituída en esa forma. Cada fiador es responsable de $500, y la fianza, admitiendo yo, como he admitido, que esa finca no está a nombre de ese señor, . . . pongo a disposición de la corte suficiente cantidad de dinero, que es lo mejor que se puede ofrecer como fianza, para responder de esa firma en su día, cuando este pleito se pierda en el Supremo, este abogado compañero mío, mi distinguido opositor, no tendrá que ir al Registro sino irse contra los $500, que es la mejor fianza; y por eso digo que esa firma vale $500, y que es suficiente ese fiador por $500; y que esa fianza es buena, y que no hay que tocarla. El juramento de la fianza, que es una cosa separada, es aparte de la fianza, el 'acknowledgment', es distinto a la fianza."

Continuó oponiéndose la demandante y la corte dijo:

"La Corte: Ya la corte resolvió denegar la admisión de esos $500 como depósito, hasta tanto se resuelva en cuanto a la suficiencia de la fianza que ha sido impugnada."

Prosiguieron aún los abogados haciendo manifestaciones alrededor del asunto y como el de la demandante dijera que se había aceptado la insolvencia del fiador Pérez, el del demandado contestó:

"Yo no he aceptado la insolvencia. Yo admito que ese señor no tiene esa casa, y la responsabilidad criminal es otra cosa, pero él tiene una responsabilidad de $500, y su firma es buena por esa cantidad."

Se prolongó aún el debate, ocurriendo finalmente lo que sigue:

"Sr. Besosa:

"Yo insisto y sigo ofreciendo los $500 en efectivo, para que se depositen para responder de la firma del fiador Antonio Pérez Ama-

dor en esta fianza, . . . ¿Su Señoría no admite el depósito de los $500 en efectivo?

"La Corte: Ya ha resuelto la corte unas cuantas veces que no se admite el depósito para hacer buena la firma de Pérez Amador.

"Sr. Besosa: Excepción. ¿Qué término me da la corte para presentar ese memorándum?

  ❋   ❋   ❋   ❋   ❋   ❋   ❋

"La Corte: Se le concede hasta el viernes, a las doce del día para que radique el memorándum."

El día tres de octubre estaba también señalado para la aprobación de la transcripción de la evidencia para el perfeccionamiento de la apelación y sólo compareció el demandado por su abogado. Comenzó a examinarse la transcripción y poco después dicho abogado pidió a la corte que ordenara la comparecencia del fiador Pérez para examinarlo y admitiera la consignación de los quinientos dólares que estaba haciendo en la secretaría.

Contestó el juez que el incidente de la fianza sólo estaba pendiente de alegato. Insistió el demandado en que su fiador no fué citado para el 29 de septiembre como debió serlo por la secretaría, replicando la corte que eso no obstante el abogado dejó sometido su caso, pendiente exclusivamente del alegato.

Continuó el demandado presentando sus puntos de vista y ocurrió finalmente lo que sigue:

"Juez: Vamos a terminar esta situación. La corte desea hacer constar que el abogado del demandado lo que está haciendo en esta moción es reproducir una moción que radicó en el día de ayer día primero de octubre, a virtud de la cual la corte dictó la siguiente orden: 'Radicada y vista la anterior moción se aprueba y se ordena al Secretario expida mandamiento dirigido al señor Antonio Pérez Amador para que el día 10 de octubre de 1941, a las 9 a. m. comparezca sin falta ante esta corte para que declare sobre los extremos contenidos en la anterior moción debiéndose notificar con copia de dicha moción y esta orden a dicho señor Antonio Pérez Amador, y al Lic. Román Díaz Collazo, abogado de la demandante.'

"Este es el motivo por el cual la corte no quiere conocer de nada en estos momentos.

"Besosa: Si S. Sᵃ me permite. Este señalamiento hecho para el día 10 de octubre será completamente académico porque para allá ya S. Sᵃ habrá dictado resolución en cuanto a la fianza ya que le ha manifestado a este abogado que de no radicarse el alegato de esta parte antes de las doce del día de hoy, S. Sᵃ fallará el caso. Yo entiendo que si S. Sᵃ ha señalado esto para el día 10, la resolución tendría que posponerse hasta el día 10, o de lo contrario vamos a quedar huérfanos de la oportunidad de presentar este fiador.

"Juez: La corte tiene que ver que esta fianza se aprueba antes de vencerse el término. No podemos aprobar una fianza a estas alturas. Han transcurrido unos cuantos días desde que se vió eso. Se quiere hacer buena la fianza en este estado por la suma de quinientos dólares ($500) que se pretende perfeccionar en corte.

"Besosa: Tomamos excepción a la resolución dictada por esta Hon. Corte, porque de hecho está fallando el incidente de fianza sin haber recibido el alegato de la parte demandada. Por estas razones tomamos excepción.''

Nos ha parecido conveniente copiar de la transcripción taquigráfica lo que antecede a fin de reproducir lo ocurrido lo más clara y exactamente posible.

El criterio del juez de distrito quedó expuesto y fundamentado en su resolución escrita de octubre 3, 1941, así:

"Uno de los motivos de impugnación a la fianza es que el fiador Antonio Pérez Amador no tiene la casa y solar que jura tener en Puerta de Tierra. El demandado acepta que ello es así, y la certificación del Registro de la Propiedad demuestra que dicho fiador no tiene finca alguna inscrita a su favor en el barrio de Puerta de Tierra.

"El demandado, mientras se celebraba la vista el referido día 29, ofreció consignar la suma de $500 para hacer buena la firma de Pérez Amador en la fianza, y por entender que no procedía tal sustitución de fianza dentro de este procedimiento, en el que la fianza debe ser aprobada dentro del término concedido al demandado para apelar, término que había expirado el día 29 de septiembre, la corte no admitió dicha consignación, ya que ello hubiera implicado aprobar una fianza después de expirado el término para apelar.

"Está firmemente establecido en esta jurisdicción, por ser esa la ley, que las fianzas en casos de desahucio deben ser radicadas dentro del término estatutario. Y si la fianza radicada en este caso dentro de dicho término no es suficiente por carecer el fiador Sr. Pérez Amador de bienes, carecemos ahora de facultad para aprobar

la fianza en metálico que ofrece el demandado en sustitución de la fianza originalmente prestada. (Véanse *Valladares* v. *Corte Municipal,* 16 D.P.R. 145; *Figueroa et al.* v. *Sepúlveda,* 24 D.P.R. 690; *Ramírez* v. *Pérez,* 25 D.P.R. 231; *Barbosa* v. *Fernández,* 28 D.P.R. 305; *Del Castillo* v. *Del Castillo,* 44 D.P.R. 554; *Pol* v. *Corte, y Suau, interventor,* 48 D.P.R. 379; *Hernández* v. *Cruz Román,* 48 D.P.R. 523; *Suau* v. *Pol,* 51 D.P.R. 445).

"Se declara con lugar la impugnación a la fianza prestada en este caso y, en su consecuencia, se decreta que la misma no tiene valor alguno, por no ser dueño de los bienes descritos en la misma el fiador Antonio Pérez Amador."

¿Fué esa resolución que lleva consigo la pérdida del recurso de apelación contra la sentencia de desahucio, simplemente prematura como decidió el juez de turno o errónea como sostiene el peticionario?

No hay duda alguna de que de acuerdo con la ley y con la jurisprudencia de esta corte interpretativa de la misma, la fianza para apelar en pleitos de desahucio debe prestarse dentro del término de cinco días que fija la ley, artículos 630 y 631 del Código de Enjuiciamiento Civil, ed. 1933, que son los 10 y 11 de la ley de 1905, pág. 286, sobre la materia.

Aquí la fianza consistió en la suma de quinientos dólares para responder de los daños y perjuicios y las costas y en el depósito mensual en efectivo del alquiler que se venía satisfaciendo. Se prestó y se aprobó dentro del plazo de ley. Sobre ello no hay cuestión, como tampoco la hay sobre el depósito mensual de la renta que ha venido haciéndose en la forma prometida.

La cuestión surgió con motivo de la impugnación de los fiadores en el sentido de no ser dueños de los bienes inmuebles que dijeron tener en sus juramentos al pie de la fianza. Se comprobó que uno de ellos los tenía. Fué con respecto al otro—Pérez Amador—que se admitió que no los tenía sin aceptarse que no tuviera otros y ofreciéndose en el acto la suma de quinientos dólares en moneda legal de los Estados Unidos para que quedara en depósito en prueba de su solvencia para responder de la obligación que había contraído.

A nuestro juicio, tomado en consideración el fin único para el cual la fianza fué prestada (*Restatement of the Law, Security*, pág. 517, 4 C.J.S. 997), archivada y aprobada la misma como lo fué en tiempo y forma, probada la solvencia de uno de los fiadores impugnados y entregada en efectivo en cuanto al otro la suma garantizada, no había que investigar más. Los intereses de la parte apelada quedaron garantizados y la apelación debió continuar su curso.

¿Permite la ley aplicable esa interpretación que es la que estimamos apropiada para que se haga justicia substancial en este caso, tomando en consideración todos los intereses envueltos? Veámoslo.

La ley de desahucio—artículo 11 de la misma, 631 del Código de Enjuiciamiento Civil, ed. 1933, ya citado—sólo exige una fianza a satisfacción del tribunal. La que aquí se prestó lo fué. Su cuantía era la de quinientos dólares y estimando la corte que de acuerdo con sus respectivos juramentos los fiadores tenían bienes suficientes para responder de esa suma, consideró buena la fianza. El punto básico era la existencia de una garantía hasta la indicada suma. Presentádole por uno de los fiadores la garantía en su totalidad en efectivo cuando su solvencia fué impugnada, la corte tuvo necesariamente que quedar satisfecha de igual modo.

Se insiste, sin embargo, en que se admitió que el fiador no tenía el bien inmueble que aseguró tener bajo juramento al prestarse la fianza, pero aparte de que si bien esa admisión se hizo, no se admitió que el fiador careciera en ese momento de otros bienes, lo que haría en todo caso prematura la resolución de tres de octubre de la corte de distrito por haberse dictado antes de oírse al fiador sobre el particular, como sostuvo el juez de turno, entendemos que si bien el argumento era de peso antes de la entrega del dinero, dejó de serlo después.

Parece que la corte de distrito entendió que lo que se pretendía con la entrega de los quinientos dólares, valor de la

garantía, era sustituir la fianza, y creemos que fué ese entendimiento lo que la indujo a error.

Aquí la fianza era buena y suficiente de su faz. Se impugnó la suficiencia de los fiadores y en ese trámite, para probar la de uno, se entregó la suma afianzada y la corte se negó a recibirla, y el peticionario apelante invoca en justificación de lo que hizo de la obra Brandt *Suretyship Guaranty,* Vol. 1, 3ra ed., lo que sigue:

" . . . Un fiador puede, con el fin de evitar que se investiguen sus bienes, depositar en corte la suma por la cual se obliga. . . "

Lo que la ley general—artículo 355 del Código de Enjuiciamiento Civil, ed. 1933—exige para que una persona pueda constituirse en un fiador personal, es que sea "residente, cabeza de familia o propietario en Puerto Rico" y que tenga "bienes por valor de la cantidad especificada en la obligación. .", texto español, "resident and householder or freeholder . . and worth the sums specified in the undertaking . .", texto inglés.

"Householder" es:

"Un jefe de familia; una persona que tiene a su cargo y sostiene a una familia u hogar (*household*); uno que vive una casa con su familia, uno que sostiene una casa con su familia; el que habita una casa; el cabeza de familia; el amo o jefe de una familia. El concepto conlleva la idea de un establecimiento doméstico o la dirección de un hogar y de residencia. Se ha sostenido que el mismo incluye mujeres casadas, viudas, viudos y solteros, siempre que ellos constituyan el cabeza de familia." 30 C. J. 474, 475.

Y "freeholder", según la misma autoridad, es:

"Un concepto que ha sido objeto de gran número de definiciones pero que generalmente se emplea para designar el dueño de propiedad inmueble."

De manera que pueden ser fiadores personales lo mismo los dueños de bienes inmuebles que los cabezas de familia que no los tengan pero que como los primeros "are worth the sums specified in the undertaking," y aquí quedó demos

trado que el fiador Pérez valía por lo menos la suma especificada en la fianza al entregarse en efectivo la misma a la corte cuando su solvencia fué impugnada. 71 C. J. 1620, 1621.

Por virtud de todo lo expuesto e inspirándonos en el criterio liberal que informó nuestra decisión en el caso de *Oliver v. Soto*, 57 D.P.R. 418, opinión de la corte emitida por el Juez Asociado Sr. Hutchison, creemos que hacemos justicia substancial si enmendamos la sentencia del juez de turno recurrida devolviendo el caso a la corte de su origen para que se permita al fiador Pérez Amador o al demandado apelante en su nombre depositar la suma de quinientos dólares en prueba de su solvencia dentro del término de dos días contado a partir de la fecha en que la sentencia de esta corte se inscriba en la corte del distrito. Párrafo tercero del artículo 306 del Código de Enjuiciamiento Civil, ed. 1933.

En cuanto al otro extremo alegado en el certiorari o sea la nulidad de la sentencia en el caso de desahucio, la sentencia del juez de turno debe confirmarse. No es cuestión propia para ser tratada dentro del certiorari sino dentro de la apelación en su día.

Y habiendo llegado a las conclusiones que dejamos expuestas, claro es que *el recurso establecido contra la resolución del juez de turno por la demandante en el pleito de desahucio, debe ser declarado sin lugar.*

Los Jueces Asociados Sres. Todd, Jr., y Snyder no intervinieron.